HENRY FAUCETT, Respondent, *v.* FREDERICK S. NICHOLS, Appellant.

Under the provisions of the innkeepers' act of 1866 (chapter 658, Laws of 1866), exempting an innkeeper from liability for the loss by fire of property of a guest in a barn or outbuilding, where it shall appear that the loss was the work of an incendiary, and occurred without negligence on his part, the burden is upon the innkeeper to show that the fire was an incendiary one, and to show absence of negligence on his part.

In an action to recover for such a loss, evidence was given tending to show that the fire was the work of an incendiary, who gained access to the hay loft, where the fire was set, through a window opening into an alley. The window was left open and lumber was piled against the barn so that a person could easily climb upon it and enter the window. The court submitted to the jury the question whether leaving the window open was negligence, charging that if so, and it contributed to occasion an incendiary firing, defendant was liable. *Held*, no error; that the facts proved, although not strong, were some evidence of negligence sufficient to authorize the submission of the question to the jury; and that the negligent omission by an innkeeper to take reasonable and prudent precaution to guard against an incendiary fire was such negligence as would deprive him of the benefit of the act.

Negligence, which precedes and facilitates the commission of the crime, is as much within the statute as the negligent omission to protect and remove the property after discovery of the fire.

The question as to whether the fire was of incendiary origin was contested. Defendant offered to show that on the night of the fire an attempt was made to fire another building, a short distance from the barn of defendant, by the use of similar means to those which defendant's evidence tended to show were used in firing said barn. This evidence was objected to, and objection sustained. *Held*, error; that the evidence was competent as bearing upon the question of the origin of the fire.

*Faucett* v. *Nicholls* (2 Hun, 521; 4 T. & C., 597) reversed, but not on point decided below.

(Argued February 11, 1876; decided March 21, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 2 Hun, 521; 4 T. & C., 597.)

This action was brought against defendant, an innkeeper, to recover for the loss of plaintiff's horses, carriage, harness, etc., which were burned up in defendant's barn, plaintiff being at the time his guest. The defence attempted to be established was that the fire was the work of an incendiary, and that it occurred without defendant's negligence.

Defendant's evidence tended to show that the fire was of incendiary origin; that it was set in the hay loft, and that kerosene was poured on the barn floor, which caused the fire to spread rapidly. Plaintiff gave evidence tending to show that the fire might have been occasioned by the negligence of defendant's hostler in smoking in the barn. It appeared that the barn doors were fastened, but that a window or opening into the loft over a lane in the rear of the barn was left open, and that a pile of boards was piled up against the barn, so that a person could easily climb up thereon and gain an access to the hay loft. Defendant offered to show that an attempt was made upon the same night to fire a building within forty rods of defendant's barn, where buildings were close and compact, and that kerosene, paper and other combustibles were used in that attempt. Plaintiff's counsel objected to the evidence. The court sustained the objection, to which decision defendant's counsel duly excepted.

The court charged the jury, among other things, as follows: " If you find the barn was left so open or easy of access, and there was such fault on the part of the defendant as to make it possible for an incendiary to set fire to the building, that fact would charge him with liability, even if the fire was set by an incendiary. If you find the fire was set by an incendiary, but it was by negligence on the part of the defendant, which made it possible for an incendiary to set fire to it, he would be liable for the loss, but that negligence must have been such that a man reasonably careful of his own property would not have been guilty of," and submitted to them the question whether the leaving the window in the loft open with the pile of boards underneath was such negligence.

Further facts appear in the opinion.

*Geo. B. Bradley* for the appellant. It was error to charge that, although the fire was incendiary, defendant's negligence in leaving the window of the barn open would render him liable. (33 N. Y., 571; Laws 1866, chap. 658; *People* v. *Utica Ins. Co.*, 15 J. R., 358, 380; *Townelle* v. *Hall*, 4 Comst., 140, 144.) It was error to reject the evidence offered of an attempt to fire another building near by, the same night. (*Cary* v. *Hotaling*, 1 Hill, 316; *Hull* v. *Naylor*, 18 N. Y., 588.) The evidence offered that defendant had no insurance was proper. (*Shepherd* v. *People*, 19 N. Y., 537.)

*Wm. B. Ruggles* for the respondent. The question put to defendant as to what he lost by the fire was properly excluded. (Whart. on Neg., §§ 458, 461, 462; Story on Bailm., §§ 63–69; S. & R. on Neg., § 21; *Dorman* v. *Jenkins*, 2 Ad. & El., 256; *Rooth* v. *Wilson*, 1 B. & Ald., 59; *Tracy* v. *Wood*, 3 Mason, 132.) Evidence of another attempt at arson in the neighborhood on the same night was properly excluded. (1 Phil. E., 732, note 1 [4th Am. ed.]; 2 id., 1004; *Comm.* v. *Brennemann*, 1 Rawle, 311, 316, 317; *Turner* v. *Fendall*, 1 Cranch, 132; *People* v. *Kennedy*, 32 N. Y., 141; *Holcomb* v. *Hurson*, 2 Camp., 391; *Balcetti* v. *Serani*, 1 Peake, 142.) Plaintiff, being a bailee of the horses burned, was entitled to bring this action. (*Kellogg* v. *Sweeney*, 1 Lans., 397; *Bliss* v. *Schaub*, 48 Barb., 339; Story on Bailm., § 94; *Rooth* v. *Wilson*, 1 B. & Ald., 59; *Falkner* v. *Brown*, 13 Wend., 63; *Freeman* v. *Birch*, 43 Eng. C. L., 835.) Whether defendant was negligent was a question for the jury. (*Hackland* v. *N. Y. C. and H. R. R. R. Co.*, 53 N. Y., 654; *R. R. Co.* v. *Stout*, 17 Wall., 657; *Ireland* v. *Plank-road*, 13 N. Y., 533; *Mangum* v. *Bkyn. R. R. Co.*, 38 id., 455; *Schwerin* v. *McKie*, 51 id., 180; *Dansey* v. *Richardson*, 3 E. & B., 165; *Coggs* v. *Bernard*, 2 Ld. Raym., 916; *Oldfield* v. *N. Y. and H. R. R. Co.*, 14 N. Y., 310; *White* v. *McLean*, 47 How., 193.)

ANDREWS, J. The common-law liability of innkeepers for loss of the property of guests by fire, occurring without the innkeeper's fault or negligence, as declared in *Hulett* v. *Swift* (33 N. Y., 571), was modified and limited by chapter 638 of the Laws of 1866. The case of *Hulett* v. *Swift* was decided in 1865, and it was held that an innkeeper was an insurer of the property committed to his custody by a guest, as against loss by fire, and the defendant in that case was made responsible for the goods of the plaintiff in his custody as innkeeper, which were consumed by fire while in the barn of the defendant. The act of 1866 seems to have been passed in view of this decision, and to mitigate the rigor of the rule declared in *Hulett* v. *Swift*. The statute is as follows: "No innkeeper shall be liable for the loss or destruction by fire of property received by him from a guest, stored, or being with the knowledge of such guest, in a barn or outbuilding, when it shall appear that such loss or destruction was the work of an incendiary, and occurred without the fault or negligence of such innkeeper."

The burden is upon the innkeeper claiming the benefit of this statute to show that the fire occasioning the loss of the goods of the guest was an incendiary one, and the absence of negligence on his part connected with the transaction. He is exempted from liability when it "shall appear" that the circumstances exist which, under the statute, exonerate him from liability. The defendant relied upon this statute as a defence in this case, and evidence was given on his part tending to show that the fire which destroyed the barn, in which at the time were the horses and wagon of the plaintiff, was the work of an incendiary, and that it was set in the hay loft, to which communication was had through a window of the barn opening into an alley in the rear, which connected two streets. This window had been left open for several weeks, and during this time lumber was piled against the barn, so that a person could easily climb upon it and enter the loft through the open window. The court submitted to the jury the question whether the defendant, in leaving the door of

the loft open, was, under the circumstances, chargeable with negligence, and ruled, in substance, that if the jury should find that this was a negligent act which contributed to occasion an incendiary firing of the barn, the defendant was liable for the loss sustained by the plaintiff.

The omission on the part of a bailee to use due care in protecting the property intrusted to him subjects him to liability for loss or injury resulting from such omission ; and he is not exempted from responsibility, although the goods have been lost by the felony of a third person, if his negligence furnished the occasion and opportunity for its commission.

In *Coggs* v. *Bernard* (2 Ld. Raymond, 909) Lord HOLT, in considering the second sort of bailment enumerated by him, viz., *commodatum*, says : " But if the bailee put his horse in his stable, and he were stolen from thence, the bailee shall not be answerable for him ; but if he or his servant leave the house or stable doors open and the thieves take the opportunity of that and steal the horse, he will be chargeable ; because the neglect gave the thieves the occasion to steal the horse." (See also *Dansey* v. *Richardson*, 3 E. & B., 165; *Schwerin* v. *McKie*, 51 N. Y., 180.) Thefts and burglaries are the frequent causes of the loss of goods, and a bailee may reasonably be required to take notice that the desire to obtain them is an inducement to the commission of crime, and to act in view of this fact, and exercise due care to protect them from thieves and burglars. If the horses of the plaintiff had been stolen from the barn of the defendant and his liability depended upon the existence of negligence on his part, on proof that the doors were left unlocked and open, and that no means had been taken to watch or guard the barn, it would be for the jury to say whether, under the circumstances, he was guilty of negligence. It must be admitted that the fact that the window of the hay loft was left open, and that the barn was accessible from the alley, is not very strong evidence of negligence. The crime of incendiarism is much less frequent than theft or robbery and is prompted, ordinarily, by different motives. But we canno⁺

say that the fact proved furnished no evidence upon the question of negligence. Negligence is usually a question of fact and not of law. The jury understood the condition and the location of the premises, and as practical men could judge whether proper care required the defendant to keep the window of the loft closed, as a protection against incendiaries, who might from wantonness, revenge or other motive, upon opportunity offered, set fire to the premises. I am of opinion, therefore, that the question of the defendant's negligence was a question of fact and not of law, and was properly submitted to the jury, and that negligence on the part of an innkeeper in omitting precautions which a reasonable and prudent man ought to take to guard against an incendiary fire, is such negligence as will deprive him of the benefit of the statute. The loss or destruction of the property of the guest does not in that case occur without the innkeeper's fault or negligence. Negligence which precedes and facilitates the commission of the crime, is as much within the statute as the negligent omission to protect and remove the property of the guest after the fire had commenced. Whether the fire was incendiary, or accidental, or negligent merely, was a material question on the trial. There was no direct evidence as to how it originated. Circumstances were proved on the part of the defendant which would have justified the jury in finding that it was the work of an incendiary. The fire occurred between nine and ten o'clock in the evening; the night was rainy and the fire was first discovered near the window of the loft, and it was shown that two persons, not recognized or identified, ran out of the alley from near the barn, just after the fire commenced, and disappeared. The alarm of fire had then been given and they were in a position to have heard it. Witnesses testified to appearances indicating that kerosene, or some other combustible fluid, had been put upon the floor of the barn. The defendant and his servants and the tenant, who occupied a part of the building, testified that the fire was not produced by their act or neglect. The plaintiff controverted the fact, alleged by the

defendant, that the fire was the work of an incendiary. The evidence as to the suspicious conduct of the two men was not denied, but evidence was given on the part of the plaintiff tending to contradict the testimony of the defence as to the presence of kerosene or other burning fluid on the barn floor; and one of the plaintiff's witnesses testified that the defendant's hostler was accustomed to smoke in the barn, and that he saw him, about eight o'clock on the night of the fire, lying on the bedding in one of the rear stalls smoking a pipe, and reading by the light of a lamp. It appears sufficiently from this reference to the evidence that the character of the fire, whether incendiary or not, was sharply contested. Each party has the right to show any circumstance in support of his theory as to the origin of the fire, which legitimately tended to establish it.

The defendant called one Trenchard as a witness, and offered to show by him that on the next street west, within forty rods of the barn which was burned, an attempt was made during the same night to fire a building, at a point where the buildings were close and compact, and that kerosene, paper and other combustibles were used in the attempt. This evidence was objected to as immaterial, and it was excluded by the judge. I am of opinion that the evidence offered was admissible. The offer was to show an actual attempt on the same night to burn another building in the same village, by the use of similar means, as the evidence on the part of the defendant tended to show, were used in firing the barn.

The fact in issue, to which this evidence related, was whether the defendant's barn was fired by an incendiary. If there had been a series of incendiary fires in that village previous to and near the time of the fire in question, could not this fact have been shown in aid of the defence? It cannot be denied that in connection with the other circumstances proved, it would have produced upon the mind a strong conviction that the fire in the defendant's barn was also caused by an incendiary.

The proof offered was not merely of facts tending to estab-

lish a presumption, that an attempt to fire another building on the same night had been made, but of an attempt made, which failed. There was here no uncertainty as to the collateral fact sought to be proved, and if the fact had been admitted that incendiaries were at work in another place in the village on the same night it would have had a direct and material bearing upon the question as to the character of the fire which destroyed the barn.

This is not the case of the trial of a person charged with the crime of arson in burning the barn. If, on such a trial, it was sought to show, as an independent and disconnected fact, that the prisoner on the same night attempted to burn another building in the same village, it would be inadmissible under the general rule that on the trial of a prisoner for one crime, proof cannot be given that he had committed another. There are some well known exceptions to this rule when the object is to show the *quo animo,* as to the transaction on trial. But in investigating in a civil suit a question depending solely upon circumstantial evidence, it would, I think, be holding too strict a rule to refuse evidence such as was offered in this case, which is connected with the principal fact by circumstances which naturally tend to establish it.

There is no fixed and definite rule by which it can be determined whether a collateral fact is so remote as to be inadmissible to support the principal fact sought to be established. The question must, to a considerable extent, be decided in each case, on its own circumstances, and we are of opinion that the proof offered, to which we have referred, ought to have been admitted.

The judgment should be reversed and a new trial ordered.

All concur.

Judgment reversed.