Richard S. Lake, J.
When Mr. and Mrs. Aldrich presented themselves at the Waldorf’s check room at the conclusion of the Viennese Opera Ball, Mrs. Aldrich’s mink jacket was missing. The check room was operated for the Waldorf by Harry Cantor but this fact was not revealed in any way to the guests.
The Waldorf and Mr. Cantor seek to avoid the ordinary consequences of the law of bailments by relying on the limitation of liability contained in section 201 of the General Business Law. Such limitation is not available to Mr. Cantor because he is not a hotel, motel-or restaurant. The statute is in derogation of common-law liability and must be strictly construed (Marks v. Planetary Recreations, 86 N. Y. S. 2d 487, affd. 274 App. Div. 993; Jacobson v. Belplaza Corp., 80 F. Supp. 917, affd. sub nom. Jacobson v. Richards & Hassen Enterprises, 172 F. 2d 464). Nor can the Waldorf hide behind the statute because it is applicable only where no fee or charge is exacted for checking. Here the 35$ per garment familiar to those who participate in New York’s social whirl was paid. Whether called a gratuity or otherwise, one need only try to check a coat without paying it to realize that it is indeed a fee.
The above determinations render it unnecessary for the court to reach the issue of whether there has been sufficient posting to comply with the statute. The Waldorf uses the standard card approved by the New York State Hotel Association which bears a legend at the top “ Notice to guests ” in large black type. The legend is followed in equally large black type by a message concerning the availability of a safe in the office, and then in slightly smaller lighter but still eminently readable type comes information concerning rates. Finally and occupying two thirds of the card in legible but very tiny type are printed the provisions of several sections of the General Business Law including section 201. Such a card in a frame was hung on the wall between the elevators on the ballroom floor where departing guests would have ample opportunity to see it but arriving guests would have their backs to it. There was also eviden.ee *415 that such cards were at either end of the 40- to 45-foot checking counter at the Waldorf which is divided by pillars into four or five checking stations. The court is highly dubious as to whether this constitutes the posting “in a conspicuous place and manner ” as required by the statute. It is clear that without a showing of such posting no limitation is available (Dilkes v. Hotel Sheraton, 282 App. Div. 488; Gardner v. Roosevelt Hotel, 263 App. Div. 268; Swetlow v. Zindorest Park, 201 Misc. 116, mod. on other grounds 202 Misc. 628, affd. 281 App. Div. 369). But what constitutes 11 conspicuous ” posting has not been delineated in any recorded decision to the court’s knowledge.
The Waldorf and Mr. Cantor also defend by alleging contributory negligence on the part of Mr. and Mrs. Aldrich in. accepting only one check for two garments. This is not an uncommon practice in check rooms across the city. It was initiated here and generally by and for the convenience of the check room, and plaintiffs will not he held contribntorily negligent for merely failing to protest it.
Finally the Waldorf defends on the grounds that it was not responsible for the check room, having franchised it to Mr. Cantor. Under the circumstances, this position flies in the face of the ordinary principles of agency. So far as Mr. and Mrs. Aldrich and the other guests were concerned, they were entrusting their coats to the safekeeping of the Waldorf. To the extent that Jacobson v. Richards & Hassen Enterprises (supra) is to the contrary, it will not be followed.
Plaintiffs may have judgment against defendants for $1,400 together with the cost and disbursements of this action. The Waldorf has cross-claimed against Mr. Cantor based upon an indemnity agreement. No evidence thereon was adduced, however. Accordingly, the cross claim will not he adjudged and this determination is specifically without prejudice to its renewal.